**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

REUBEN McDOWELL,

                           Plaintiff,

    v.                                               No. 06-CV-1060
                                                                   (GLS/DRH)

DANIEL STEWART, Commission of Corrections;
MICHAEL GATES; LT. VanWINKLE; C. HALL; and
M. HARPP,

                           Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

REUBEN McDOWELL
Plaintiff Pro Se
07-A-0885
Marcy Correctional Facility
Post Office Box 3600
Marcy, New York 13403

HON. ANDREW M. CUOMO             RICHARD LOMBARDO, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendant Stewart
The Capitol
Albany, New York 12224-0341

MURPHY, BURNS, BARBER &           THOMAS K. MURPHY, ESQ.
   MURPHY, LLP
Attorney for Defendants Gates,
   VanWinkle, Hall, and Harpp
226 Great Oaks Boulevard
Albany, New York 12203

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Reuben McDowell ("McDowell"), presently an inmate in the custody of the

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, Daniel Stewart ("Stewart") of the New York State Commission of Correction[2] and four employees of the Warraen County Correctional Facility ("Warren"), violated his Fourteenth Amendment rights while McDowell was incarcerated at Warren.  Second Am. Compl. (Docket No. 45).  Presently pending are Stewart's motions to dismiss (Docket Nos. 23, 49)[3] pursuant to Fed. R. Civ. P. 12(b)(6).  McDowell opposes the motion.  Docket No. 46.  For the following reasons, it is recommended that Stewart"s motion be granted.

---

[2]  The New York State Commission of Correction has a mission to provide for a SAFE, STABLE and HUMANE correctional system in New York State.

To this end, the Commission:

- Promulgates minimum standards for the management of correctional facilities.
- Evaluates, investigates and oversees correctional facilities.
- Assists in developing new correctional facilities.
- Trains correction officers, supervisors and managers.
- Provides technical assistance.

Mission Statement, New York State Comm'n on correction (visited Feb. 4, 2008) <http://www.scoc.state.ny.us>; see also N.Y. Correct. law art. 3 (McKinney 2003 & Supp. 2007).


[3] Stewart filed a first motion to dismiss on March 19, 2007.  Docket No. 23.  By order, dated September 19, 2007, the Court granted McDowell leave to file a second amended complaint.  Docket No. 45.  McDowell filed the second amended complaint on November 1, 2007.  Docket No. 45.  Stewart again moved to dismiss, based on McDowell's second amended complaint, asserting a virtually identical basis for dismissal.  Docket No. 49.  Stewart then submitted a letter-request asking that the first motion be deemed superceded by the second.  Docket No. 50.  This letter-request is granted.

## I. Background

The facts are related herein in the light most favorable to McDowell as the nonmoving party.  See subsection II(A) infra.

McDowell filed the present complaint while confined in the Special Housing Unit ("SHU")[4] at Warren.  Second Am. Compl. at ¶ 3.  On June 15, 2006, McDowell received a misbehavior report for being involved in an altercation with another inmate.  Id. at ¶ 6(a).  McDowell claims that defendants did not follow proper protocol in writing the incident report because it was "one sided and only state[d] accusations against [McDowell] . . . ."  Id. at ¶ 6(b).

"On June 15, 2006, [McDowell] was placed [in] Administrative Segregation . . . [without providing him] notice . . . even after several inquiries to supervising staff."  Id. at ¶ 8(b).  McDowell remained in administrative segregation for fifteen days awaiting his review, while two other "white make inmates, who were also confined in SHU both received copies of their Admin. Seg. [sic] paperwork . . . [and] were released from segregation after their 5 day review."  Id. at ¶ 8 (c)-(e).  Defendants Gates and VanWinkle both indicated to McDowell that there was a policy prohibiting dissemination of such administrative segregation orders.  Id. at ¶ 8(f).  McDowell requested said policy and has yet to receive it.  Id.

On June 26, 2006, prior to McDowell's disciplinary hearing, he was offered a plea bargain for his misbehavior report of 240 days confinement in SHU, which he rejected.  Id.

---

[4] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

at ¶ 7 (e),(g). At the subsequent disciplinary hearing on July 1, 2006, McDowell attempted to preclude defendants from producing evidence as "a copy of it had not been provided to [McDowell] 24 hrs [sic] prior to the hearing." Id. at ¶ 7(a)-(b). The hearing was adjourned and reconvened on July 7. McDowell was ultimately found guilty and sentenced to 360 days confinement in SHU. Id. at ¶ 7(e). McDowell appealed the conviction but received no answer. Id. at ¶ 7(h). McDowell also corresponded with the Commission of Corrections, seeking an "investigat[ion of] the complaints addressed to them." Id. at ¶ 9(a). These requests went unanswered or were denied. Id. at ¶ 9. This action followed.

## II. Discussion

McDowell asserts that his rights were violated under the Fourteenth Amendment because he was (1) denied due process during the disciplinary proceedings and (2) discriminated against when defendants refused to provide him with a copy of his administrative segregation order. Stewart moves to dismiss based upon his lack of personal involvement and qualified immunity.

### A. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006

WL 2827132, at *3 (N.D.N.Y. 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted).

### B.  Personal Involvement

Stewart contends that McDowell has failed to establish his personal involvement. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.

5

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

McDowell claims that Stewart "denied [him] equal protection . . . and due process; [sic] where they failed to answer or respond to the issues set fourth [sic] in the numerous complaints by [McDowell]."  Second Am. Compl. at ¶ 9.  Additionally, McDowell alleges that the Commission "failed to investigate the complaints addressed to them and allowed the continous of [sic] wrongful acts and conduct even after complaints were made . . . ."  Id. at ¶ 9(a).

However, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation."  Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005); see also Bodie v. Morgenthau, 342 F. Supp. 2d 193, 204 (S.D.N.Y. 2004) (holding that "mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . .").  Moreover, "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official

6

liable for the alleged violations." Greenwaldt v. Coughlin, No. 93-CV-6551 (LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995). Additionally, "affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983." Manley v. Mazzuca, No. 01-CV-5178 (KMK), 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (citing Foreman v. Goord, No. 02-CV-7089 (SAS), 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) ("The fact that [the prison superintendent] affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement.")). However, where a supervisory official receives, reviews, and responds to a prisoner's complaint, personal involvement will be found. See Bodie, 342 F. Supp. 2d at 203 (citations omitted).

First, even assuming that Stewart held a supervisory position regarding Warren's disciplinary actions against McDowell, Stewart's actions of signing correspondence denying McDowell's complaints and requests for reconsideration and investigation are insufficient to allege personal involvement. McDowell was not entitled to an investigation solely because he requested it. Additionally, there is no evidence that Stewart participated in McDowell's case to any extent greater than signing on behalf of the Commission on Correction the responses to the letters which McDowell sent. Moreover, Stewart may not be held liable based solely on his supervisory status or acts of affirming subordinates' administrative proceedings. McDowell's conclusory remarks asserting Stewart's participation in the denial of his due process rights, without more, are inadequate to prove Stewart's personal involvement.

Additionally, "members of the Commission [on Correction] are not endowed with any operational or supervisory responsibilities of the . . . New York [DOCS] Facilit[ies] . . . ." and

7

thus have no power to control the internal policies or procedures of each institution. Brody v. McMahon, 684 F.Supp. 354, 356 (N.D.N.Y. 1988). Therefore, it is impossible to assert that Stewart's actions were the basis of any alleged unconstitutional practice or policy occurring at Warren. Although McDowell does not allege negligent supervision by Stewart, such allegations would be baseless because the same reasoning holds true. Stewart was not personally involved because Commissioners are not granted any supervisory powers concerning the internal governance of county facilities.

Therefore, it is recommended that Stewart's motion to dismiss on this ground be granted.

### C. Qualified Immunity

In the alternative, Stewart seeks dismissal on the ground that he is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Stewart's allegations as true, he has not shown that Stewart violated his constitutional rights.

Therefore, it is recommended in the alternative that Stewart's motion on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Stewart's motion to dismiss (Docket No. 49) be **GRANTED** and that the Second Amended Complaint be **DISMISSED** in all respects as to Stewart; and

**IT IS ORDERED** that Stewart's letter-request (Docket No. 50) is **GRANTED**, Stewart's second motion to dismiss (Docket No. 49) supercedes the first motion (Docket No. 23), and the Clerk shall **TERMINATE** Stewart's first motion to dismiss (Docket No. 23).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 6, 2008
       Albany, New York

_____
United States Magistrate Judge