**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

REUBEN McDOWELL,

                           Plaintiff,

        v.                                   No. 06-CV-1060
                                               (GLS/DRH)

MICHAEL GATES; LT. VanWINKLE; C.
HALL; and M. HARPP,

                          Defendants.
_____

**APPEARANCES:**                         **OF COUNSEL:**

REUBEN McDOWELL
Plaintiff Pro Se
07-A-0885
Marcy Correctional Facility
Post Office Box 3600
Marcy, New York 13403

MURPHY, BURNS, BARBER &amp;         THOMAS K. MURPHY, ESQ.
   MURPHY, LLP
Attorney for Defendants
226 Great Oaks Boulevard
Albany, New York 12203

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Reuben McDowell ("McDowell"), an inmate presently in the custody of

the New York State Department of Correctional Services and formerly incarcerated at the

Warren County Correctional Facility ("WCCF"), brings this action pursuant to 42 U.S.C. §

1983 alleging that the four defendants, all Warren County employees,[2] violated his

_____

      [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

      [2] Two New York State defendants were previously dismissed from the action. See
Docket Nos. 11, 57.

constitutional rights under the Fourteenth Amendment Due process Clause.  Second Am. Compl. (Docket No. 45).  Presently pending is defendants' motion for summary judgment or to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 56. Docket No. 64.  McDowell opposes the motion.  Docket No. 65.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to McDowell as the non-moving party.  See subsection II(A) infra.

## A. The Altercation

On June 15, 2006, while incarcerated at the WCCF, McDowell was involved in an altercation with another inmate, Scott Martin.  Gates Aff. (Docket No. 64-4) ¶ 3; see also Docket No. 64-5 (criminal investigation of altercation); Docket No. 65-2 at 21-23 (same).  A criminal investigation followed.  Docket Nos. 64-5, 65-2 at 21-23.  During the investigation, New York State Police investigator Douglas David interviewed defendants Harpp and Gates, Corrections Officers Lemelin and Burch, Sgt. Vaisey, and inmates Bowling and Martin.  Docket Nos. 64-5 at 3-5. 65-2 at 21-23. The investigation revealed as follows.

Harpp was letting inmates out of their cells to move around the cell block when he heard what he thought was a fight.  Docket Nos. 64-5 at 3- 6, 64-6 at 4, 65-2 at 21.  Harpp saw McDowell atop Martin, who was pinned to the floor, punching Martin repeatedly. Docket Nos. 64-5 at 3, 64-6 at 4, 65-2 at 21.  The altercation resulted from a disagreement

over a chair in front of the television.  Docket Nos. 64-5 at 4-7, 65-2 at 22.  Another inmate, Bowling, was seated in the chair when McDowell ordered him to move.  Docket Nos. 64-5 at 4-7, 65-2 at 22-23.  When Bowling arose, Martin sat in the chair and McDowell and Martin exchanged words.  Docket Nos. 64-5 at 4-7, ;65-2 at 23.  McDowell then struck Martin in the back of the head, using both hands, one with a pen and the other with a fork, to slash at Martin, eventually knocking him from the chair.  Docket Nos. 64-5 at 4-7, 65-2 at 22- 23. Martin released McDowell when Harpp directed the two to cease fighting, but Martin continued to punch.  Docket No. 64-5 at 4, 7.

Another inmate, Salmans, submitted an affidavit in support of McDowell alleging that the genesis of the altercation was racial animus.  Salmans Aff. (Docket No. 65-2 at 11-12) at 1.  Salmans overheard Bowling and some other gentlemen plotting to "inflict bodily harm upon . . . McDowell because, one he was African American, and two because they didn't like the fact that he watched discovery channel . . . ."  Id.  Salmans also affirms that Bowling had "sharpened spoon handles in [his] socks prior to the incident happening."  Id.  Salmans asserts that on June 15, 2006, Martin and Bowling approached McDowell in a hostile manner and that they were the aggressors.  Id. at 2.  Additionally, Salmans states that no one sought eye witness testimony from any inmates in the cell block.  Id.

Harpp called for assistance, separated the two inmates, and ordered everyone else back to their cells.  Docket Nos. 64-5 at 3-6, 64-6 at 4.  McDowell was ordered back to his cell, but sought to continue fighting with Martin, ceasing only when other corrections officers appeared.  Docket Nos. 64-5 at 3-6, 64-6 at 4.  Officers Lemelin and Burch responded to the call.  Docket No. 64-5 at 3, 4.  Lemelin arrived as the inmates were returning to their cells and noticed that McDowell had blood on the back of his clothes.  Id. at 3.  Lemelin

3

then checked on Martin and observed blood on his face.  Id.  Martin was found to be

bleeding from his nose, neck, and back of the head.  Id. at 4, 7.  Lemelin escorted Martin to

the infirmary.  Id. at 3, 7.  While in the infirmary, Lemelin heard Martin tell medical staff that

he was stabbed with something during the altercation.  Id. at 3.  Shortly thereafter, Martin

was transported to the hospital where he received a staple in the back of his head to close

a laceration.  Id. at 4, 7.

 With two other officers, Lemlin went to McDowell's cell to search for the weapon.

Docket No 64-5 at 3. A tan, hard, plastic fork with blood on it was found hidden in a tote

bag.  Id. at 4.  Lemelin observed blood on a plastic chair by the television and on the nearby

carpet.  Id. at 3.  Lemelin found a black Bic pen on one of the chairs, though it appeared to

have sustained no damage and had no noticeable blood on it.  Id. at 3.


## B. The Disciplinary Proceedings

 McDowell was issued a misbehavior report charging him with assault, failure to obey

an order to stop fighting, failure to obey an order to return to his cell, and offenses against

the public order.  Docket Nos. 45 at 21, 64-6 at 2. McDowell was confined to administrative

segregation pending a disciplinary hearing.  Docket No. 64-6 at 3.  On June 16, 2006, David

met with Gates, a Captain in the Warren County Sheriff's Department with responsibility for

overseeing the operations of the WCCF, to review the video of the fight.  Docket No. 64-5 at

4.  The video confirmed the witness testimony, showing McDowell holding objects and

making chopping motions toward Martin as if he is attempting to stab him.  Id.  Gates

directed that McDowell be charged with second degree assault, which David did on June

19, 2006.  Id. at 5, 8-9.

4

On June 26, 2006, McDowell was summoned by Hall for an informal meeting. McDowell Aff. (Docket No. 65-3) ¶¶ 11-12.  During the meeting, Hall disclosed the contents of Harpp's memorandum and the video of the incident.  Id. ¶ 12.  Hall offered McDowell a plea bargain on the disciplinary charges of 240 days of keeplock[3] which McDowell refused and requested a formal hearing.  Id.  McDowell was allowed to view neither the report nor the video.  Id.; Docket No. 65-2 at 27-28.  On June 30, 2006, McDowell was notified that his formal disciplinary hearing would commence on July 1, 2006.  Docket Nos. 45 at 55, 64-6 at 5, 8.  The hearing was convened on July 1 with Hall as the hearing officer and then adjourned.  Docket Nos. 45 at 56, 64-6 at 7-8.[4]  The hearing was reconvened on July 7, 2006.  Docket Nos. 45 at 24, 64-6 at 7-8.  On July 7, 2006, McDowell was found guilty of all four charges based on the facility's video of the fight and Harpp's written statement.  Docket Nos. 45 at 24, 64-6 at 6-8.  McDowell was sentenced to 240 days of keeplock.  Docket Nos. 45 at 24, 64-6 at 8.

## C. The Appeal

On July 11, 2006, McDowell appealed the disciplinary hearing findings.  Docket Nos. 45 at 45-52, 64-6 at 11-18, 65-2 at 45-55.  McDowell claimed that the misbehavior report

---

[3]Keeplock segregates an inmate from other inmates in the general population of a prison and denies the inmate normal prison activities.  Cf.  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6.

[4]On July 1, McDowell filed a grievance concerning the length of time he had spent in administrative segregation without a notice or information concerning the basis.  Docket No. 45 at 23.  The grievance form was returned to McDowell the same day with an explanation from Hall that McDowell was "moved out of population because he jeopardized the safety, security, and good order of the facility by engaging in an altercation that left an inmate with a staple in his head."  Docket No. 45 at 22.

failed to (1) include McDowell's side of the story,[5] (2) contain any grounds for the two charges that McDowell failed to follow an order, and (3) make sense in the fourth charge. Docket Nos. 45 at 45-47, 64-4 at 12-13, .  McDowell also contended that Harpp's statement was insufficient to support the charge of assault, McDowell was improperly held in administrative segregation without being informed of the particulars of his status in contravention of the facility's policies,[6] he was denied necessary assistance for his disciplinary hearing,[7] and Hall was a biased hearing officer.  Docket Nos. 45 at 47-52, 64-6 at 13-18.  On July 15, 2006, McDowell amended his appeal alleging that the meeting on June 26, 2006 served as his first formal hearing for which he was provided no notice and the subsequent hearing and resulting disposition of July 1 and 7 were untimely.  Docket Nos. 64-6 at 19-20, 65-2 at 53-54.  McDowell further contended that the proceedings should have been recorded, the disposition should have included a more precise statement of the evidence relied upon in rendering the decision, and the end and start dates of his punishment were overly vague.  Docket Nos. 64-6 at 20-21, 65-2 at 54-55.  On July 13,

---

[5] Misbehavior reports issued for an incident involving more than one inmate should include a separately stated section regarding "the facts and circumstances surrounding each inmate's involvement . . . ."  Docket No. 65-2 at 31-32.

[6] State law required that "[a]n inmate who threatens the safety, security, and good order of the facility may be immediately confined in a cell . . . pending a disciplinary hearing . . . in administrative segregation . . . ."  Docket No. 65-2 at 33, 34.  However, "[w]ithin 24 hours of such confinement, the inmate shall be provided with a written statement setting forth the reason(s) for such confinement."  Id.  Facility policy appears to specify the latter requirement, stating that inmates "shall be provided with a copy of the Administrative Segregation Order . . . ."  Id. at 34.

[7] State law provided that "[i]f an inmate is non-English speaking, illiterate, or for any other reason is unable to prepare a defense, assistance shall be provided to the inmate . . . ."  Docket No. 65-2 at 31.

2006, defendant VanWinkle affirmed the disciplinary conviction and sentence.  Docket Nos. 45 at 53-54, 64-6 at 9-10, 65-2 at 39-40.

### D. The Grievances

On July 24, 2006, McDowell filed two grievances regarding the "failure of the Administration to provide [McDowell] with a copy of the admin[instrative] seg[regation] order and [the] reason for such segregation within 24 hours of confinement as required by . . . [law] . . ." and the fact that both the formal and informal hearings were functional equivalents and both deemed formal proceedings.  Docket Nos. 64-7 at 5-6, 65-2 at 35-36.  McDowell sought dismissal of the misbehavior report.  Docket Nos. 45 at 26, 64-7 at 8, 65-2 at 35.

On July 27, 2006, Gates sent a memorandum to McDowell setting forth his determinations.  Docket Nos. 45 at 26, 64-7 at 8-10, 65-2 at 37.  Gates found that McDowell should have received a copy of the administrative segregation order and that the regulations, policies, and administrative segregation order sheets would be modified to allow inmates automatically to receive a duplicate of those orders when issued.  Docket Nos. 64-7 at 8, 65-2 at 37.  Gates rejected McDowell's arguments that both hearings were functional equivalents as informal hearings were a common method for attempting to resolve disciplinary actions without the need for a formal proceeding.  Docket Nos. 64-7 at 8, 65-2 at 37.  Finally, Gates found that "there is no evidence that the formal disciplinary hearing process was violated [by McDowell's failure to receive a copy of the administrative segregation order]."  Docket Nos. 64-7 at 8, 65-2 at 37.

During July 2006, McDowell filed five grievances with the New York State

Commission on Corrections.  Docket No. 45 at 28-35.  The grievances alleged that (1) the disciplinary hearing practices were inadequate and the opportunity to appeal did not exist, id. at 28;, (2) WCCF employees were not following their own procedures and protocols in preparing misbehavior reports, id. at 29-30;[8] (3) charges were being applied in a racially discriminatory manner[9] and due process protections were not being observed, id. at 31-32; (4) McDowell received no assistance in preparing for his disciplinary hearing despite his request, id. at 33; and (5) his misbehavior report should have been dismissed, id. at 34-35. On September 14, 2006, McDowell's appeal of Gates' determinations was denied by the Commission. Id. at 27, 44.

McDowell was indicted on criminal charges by a grand jury for assault and criminal possession of a weapon.  Docket No. 64-5 at 10.  On December 22, 2006, McDowell entered a plea of guilty to criminal possession of a weapon.  Id. at 10.  On January 31, 2007, McDowell was sentenced as a second felony offender principally to imprisonment for two to four years.  Id. at 10.  McDowell waived any right to appeal.  Id. at 10.

_____

[8] McDowell was angered by the fact that Harpp did not issue Martin a misbehavior report.  Docket No. 45 at 30.  According to Harpp, Martin complied with the orders, but McDowell asserts that actions after the incident are irrelevant if Martin's actions prior to the incident were not investigated.  Id. at 30.  McDowell was also provided with an inmate-on-inmate incident report which he claims supports his position that the altercation was a mutual fight.  Docket No. 65-2 at 17-20.  However, McDowell threw punches and Martin was seriously injured requiring medical attention.  Id. at 19-20.

[9] McDowell asserts that defendants charged him with the unprecedented violation of "offenses to public order" because he is African American.  Docket No. 45 at 31. McDowell also contends that two white inmates fought and one was hospitalized, but those inmates each received only thirty days of discipline.  Id.

8

## II.  Discussion

In his second amended complaint, McDowell alleges that defendants violated his due process rights by failing to (1) provide him with proper notice, assistance, and a fair and impartial hearing; (2) follow WCCF' own rules and procedures; and (3) dismiss his disciplinary charges after his grievance was accepted by Gates.  Defendants contend that McDowell has failed to state a claim and that they are protected by qualified immunity.

## A.  Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, a complaint containing conclusory allegations without factual support fails to meet even the liberal standard of Rule 12(b)(6).  De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

Defendants have submitted various documents outside the pleadings in support of their motion.  Those documents have been considered by the Court.  Thus, defendants' motion must be considered as one for summary judgment.  Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006).  A motion for summary judgment may be granted if there is no

9

genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477

U.S. at 247-48.

## B. Fourteenth Amendment

### 1. Due Process

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined by confinement separate from the general prison population alone is insufficient to establish an atypical and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was held in separate confinement as well as "the conditions of the prisoner's confinement . . . relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998) (citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.1997)).  Where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000); see also Davis v. Barrett, __ F.3d __, 2009 WL 2411811, at *3-5 (2d Cir. Aug. 7, 2009) (finding questions of fact and insufficient record to grant defendants' summary judgment under Sandin where plaintiff spent sixty days in separate confinement).  Thus,

11

given the 240 days of McDowell's confinement here, questions of fact exist as to the liberty

interest asserted by McDowell.

### a. Disciplinary Report[10]

McDowell contends that his disciplinary report was defective.  McDowell possessed

no constitutional right to be free "from falsely or wrongly accused of conduct which may

result in the deprivation of a protected liberty interest," but he is still entitled "not to be

deprived of a protected liberty interest without due process of law."  Freeman v. Rideout,

808 F.2d 949, 951 (2d Cir. 1986).  Thus, a fair hearing would cure any due process

violations resulting from false accusations.  Grillo v. Coughlin, 31 F.3d 53, 56 (2d Cir. 1994);

Livingston v. Kelly, 561 F. Supp. 2d 329, 331 (W.D.N.Y. 2008) ("As the Second Circuit

noted in its decision in this case, an inmate's allegation that he has been found guilty of

false disciplinary charges may support a constitutional claim if he also alleges that he was

denied the minimal procedural due process protections . . . .").  However, for the reasons

---

[10] It appears that McDowell's claims surrounding the misbehavior report run afoul of the "favorable termination rule" of Heck v. Humphrey, 512 U.S. 477, 487-87 (1994).  That rule provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983.  This rule applies to challenges to procedures used in prison disciplinary proceedings.  Edwards. v. Balisok, 520 U.S. 641 (1997).  In this case, McDowell has both a criminal conviction and a disciplinary conviction.  The criminal conviction was based on a guilty plea to criminal possession of a weapon in satisfaction of all charges.  There is no evidence that McDowell's criminal conviction was vacated as he waived any right to appeal his criminal conviction.  McDowell's contentions that his disciplinary conviction should be dismissed due to Harpp's failure to include McDowell's version of events may imply the invalidity of that conviction contrary to Heck and Edwards.  However, defendants have not sought judgment on this ground and it will not, therefore, be considered.

discussed infra, questions of fact exist as to the sufficiency of the procedures afforded

McDowell and, accordingly, defendants' motion on this ground should be denied.

### b. Fair and Impartial Hearing

While inmates are not given "the full panoply of [due process] rights," they are still

afforded certain procedural rights.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

Prisoners are "entitled to advance written notice . . . ; a hearing affording him a reasonable

opportunity to call witnesses and present documentary evidence; a fair and impartial

hearing officer; and a written statement of the disposition including the evidence relied upon

and the reasons for the disciplinary actions taken."  Sira v. Morton, 380 F.3d 57, 69 (2d Cir.

2004) (citations omitted).

### i. Notice[11]

Due process requires written notice twenty-four hours prior to the commencement of

a formal disciplinary hearing in order "to give the charged party a chance to marshal the

facts in his defense and to clarify what the charges are . . . ."  Wolff, 418 U.S. at 564

(citations omitted).  "The effect of the notice should be to compel the charging officer to be

sufficiently specific as to the misconduct . . . charged to inform the inmate of what he is

accused of doing so that he can prepare a defense to those charges . . . ."  Taylor v.

---

[11] To the extent that McDowell contends that his June 26, 2006 meeting constituted a formal hearing, those allegations are belied by McDowell's own rejection of the plea bargain and request for a formal disciplinary hearing.  McDowell Aff. ¶¶ 11-12.  Even construing the facts in the light most favorable to McDowell, it is beyond dispute that he was aware that his formal disciplinary hearing would follow the meeting, which it did and for which he was provided adequate and timely written notice.

Rodriguez, 238 F.3d 188, 192-93 (2d Cir. 2001) (citations omitted).  Such notice guarantees a meaningful hearing where a prisoner can properly defend himself against the pending charges.  Id. at 193.

In this case, McDowell's formal hearing notice stated that it was in reference to acts occurring on June 15, 2006, provided the date and time of the disciplinary hearing, and outlined instructions that "[o]n the day of the hearing [McDowell] will need to provide [Hall] with a list of witnesses and questions to be asked of them by [Hall]."  Docket Nos. 45 at 55, 64-6 at 5, 8.  McDowell had already been provided with a copy of the misbehavior report specifying the charges.  Docket Nos. 45 at 53, 64-6 at 2- 9, 65-2 at 39.  This written notice sufficed because it provides the material information pertaining to the disciplinary charges at hand.  See Sira, 380 F.3d at 70-71 (explaining that proper notice should indicate the "inmates toward whom . . . [the] misconduct was directed," as well as "describ[ing] words, actions, [and] means employed by [the inmate] to further [the misconduct].").  Therefore, even construing the facts in the light most favorable to McDowell, no reasonable factfinder could conclude that McDowell was not given sufficiently specific information concerning the charges or provided with the information needed to defend himself.

Accordingly, defendants' motion on this ground should be granted.


### ii.  Opportunity to Present Defense

McDowell claims that he was denied (1) access to the memorandum and video tape on which Hall based his disposition and (2) assistance in presenting his defense.

"Courts have long recognized . . . that the right to know evidence supporting prison disciplinary rulings is not absolute."  Sira, 380 F.3d at 74 (citations omitted).  Because

correctional facilities present "risks of violence or intimidation directed at other inmates or staff . . . [a hearing officer may decline] disclosure of evidence [in light of] such risks . . . ." Id. at 75 (internal quotation marks and citation omitted).  Generally, the judgment of a prison officer in this context will not be questioned as long as there was "freedom from arbitrary governmental action."  Id. (citations omitted).  Accordingly, when such procedural rights are denied, "prison officials . . . must offer a reasonable justification for their actions . . . ."  Id. (citations omitted).

In this case, it is undisputed that McDowell was not permitted to see either the memorandum or the video.  McDowell Aff. ¶ 12; Docket No. 65-2 at 27-28.  Additionally, do defendants offer no evidence or an explanation how showing either piece of evidence to McDowell could lead to violence or intimidation.  McDowell was told the substance of both pieces of evidence at the June 26 meeting and again during the formal hearing.  McDowell Aff. ¶ 12.  Thus, McDowell was fully aware of the content of the two pieces of evidence. Because of these conversations, defendants contend that it was unnecessary that McDowell actually view the video or memorandum.  However, due process requires such disclosure unless defendants offer a reasonable justification for withholding disclosure, such as concerns for safety and security.  As no such explanation was provided, there is a question of fact as to the reasonableness of withholding the evidence from McDowell. Accordingly, defendants' motion should be denied on this ground.

Additionally, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges."  Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988).  Such assistance is intended to aid inmates to "gather[] evidence, obtain[] documents and relevant

15

tapes, and interview[] witnesses.  At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." Id. at 898. The Second Circuit has also held "that for inmates disabled by confinement in [separate housing] . . . , the right to substantive assistance is an obligation . . . [to] be provided in good faith and the best interests of the inmate." Id.  Any violations of this right to assistance are reviewed to assess "whether the error was harmless or prejudicial." Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991).

In this case, McDowell was never offered assistance in defending the disciplinary charges although McDowell was confined in separate housing and unable to investigate and seek witnesses.  Defendants rely on the fact that McDowell failed to call any witness at the hearing so that any error here was harmless and not prejudicial.  However, McDowell asserts that he submitted a witness list to a corrections sergeant who allegedly delivered it to Hall.  Docket No. 45 at 33.  Viewing the evidence in the light most favorable to McDowell, this presents a material question of fact.  Moreover, Salmans' affidavit belies this claim. Salmans Aff. at 1-2.  Salmans states that no inmate eyewitnesses were questioned and, if he had been contacted earlier, Salmans could have provided evidence exculpating McDowell.  Therefore, viewing the evidence in the light most favorable to McDowell, the denial of assistance was prejudicial.

Accordingly, defendants' motion on this ground should be denied.

### iii. Hearing Officer

Prisoners enjoy a constitutional right to have a fair and impartial hearing officer preside over their disciplinary hearings.  See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir.

2004).  However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . .  [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted).  Here, as discussed supra, McDowell asserts that he submitted a list of witnesses to be called at his disciplinary hearing which was delivered to Hall and ignored.  Docket No. 45 at 33.  While hearing officers not held to the same standards as judges, the act of preventing McDowell from presenting witnesses to rebut the charges and offer a defense raises a question of fact as to Hall's impartiality to the extent that it prejudiced McDowell.  Thus, defendants' motion on this ground should be denied.

### iv. Disposition[12]

"Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the prison disciplinary board."  Freeman v. Rideout, 808 F.2d 949, 954-55 (2d Cir. 1986) (citations omitted).  However, this presupposes that an inmate received procedural due process.  As discussed supra, questions of fact have been raised whether

---

[12] To the extent that McDowell alleges that his federal rights were violated by Hall's refusal to record the disciplinary hearings, those claims are without merit.  See Dixon v. Goord, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002) (explaining that "the only written or audio record of [a] disciplinary hearing that must be maintained to comply with minimal due process standards is a written statement describing the evidence relied upon and the reasons for the determination.") (citing Wolff, 418 U.S. at 564-65).  New York law requires that an electronic record of a disciplinary hearing be made, but such a record is not constitutionally required and "[violations of state law . . . do not alone constitute a deprivation of due process . . . ."  Id. at 744-45 (internal quotation marks and citations omitted).

McDowell was denied adequate assistance and an impartial hearing officer.  Thus, viewing the evidence in the light most favorable to McDowell, his due process rights were not upheld and a question of fact exists as to the disposition.  Accordingly, defendants' motion should be denied on this ground.

### c. Administrative Segregation

A prisoner has a "liberty interest in remaining free from administrative confinement unless a correction officer has reasonable grounds to believe that he poses a threat to the order, safety or security of the correctional facility."  Lowrance v. Achtyl, 20 F.3d 529, 237 (2d Cir. 1994).  In this case, regardless of which inmate was the aggressor, McDowell was involved in a fight where Martin suffered serious injuries and required medical attention at a hospital emergency room.  Even viewing the facts in the light most favorable to McDowell, this event provided reasonable cause to believe that McDowell posed a threat to the safety and security of the correctional facility justifying his separation from the general prison population.

"A prisoner subject to administrative confinement, pending the resolution of misconduct charges, is entitled to at least some notice of the charges against him and an opportunity to present his views . . . ."  Soto v. Walker, 44 F.3d 169, 172 (2d Cir. 1995) (internal quotation marks and citations omitted).[13]  "Officials must conduct an informal,

---

[13] It is important to note that the notice and opportunity to be heard required for an administrative segregation order is no where near as extensive or formal as that required during the course of a disciplinary hearing.  Soto, 44 F.3d at 172 n.3 (citations omitted).  Thus, McDowell essentially has two prongs of his due process claim, the first regarding his disciplinary hearing and the process accorded him and the second relating to his confinement in administrative segregation.

nonadversary evidentiary review of the information in support of the . . . administrative

confinement, and that proceeding must occur within a reasonable time . . . ."  Id. (internal

quotation marks and citations omitted).  Failure to provide such an informal hearing within

seven days has been determined a due process violation.  Id. at 172-73 (citations omitted);

see also Hameed v. Coughlin, 37 F. Supp. 2d 133, 149 (N.D.N.Y. 1999) ("The regulations

provide only that an inmate assigned to administrative segregation will have his status

reviewed every seven days for the first two months, and every thirty days thereafter.") (citing

N.Y. Comp. Codes R. & Regs. tit. 7, § 301.4(d)).

    In this case, only one of the requirements was met.  McDowell was apprised of the

charges against him when he was provided with a copy of the misbehavior report.  Docket

Nos. 45 at 53, 64-6 at 9, 65-2 at 39.  Moreover, McDowell was summoned for an informal

meeting where he was given more specific bases for his confinement – the contents of

Harpp's memorandum and a description of what was on the video tape.  McDowell

requested a formal hearing, insinuating that he wished to forego immediate presentation of

a defense.  McDowell Aff. ¶¶ 11-12.  However, this informal hearing occurred eleven days

after he was placed in administrative segregation.  Id.

    McDowell was also permitted to file a grievance on July 1 concerning why he was still

confined in segregation.  Docket No. 45 at 23.  He received a response, explaining that he

"jeopardized the safety, security and good order of the facility by engaging in an altercation

that left an inmate with a staple in his head."  Docket No. 45 at 22.  Writing such a

grievance has been deemed adequate to satisfy the constitutional requirement of an

adequate opportunity to be heard and give officials time to review the reasons for

segregation.  Lowrance, 20 F.3d at 536.  However, this occurred sixteen days after

McDowell was placed in segregation.  As such, it too was not timely and does not suffice to satisfy the requirements of due process violation.  Soto, 44 F.3d at 172-73.

Accordingly, defendants' motion should be denied on this ground.

### 2. False Misbehavior Reports[14]

Liberally construing McDowell's complaint, he alleges that defendants issued false misbehavior reports in violation of his constitutional rights.  As discussed supra, an inmate enjoys a right not to be deprived of a liberty interest without due process.  However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman, 808 F.2d at 951.  "There must be more, such as retaliation against the prisoner for exercising a constitutional right."  Boddie, 105 F.3d at 862.  McDowell has offered no evidence that any misbehavior report was issued in retaliation for McDowell engaging in constitutionally protected activities.  Accordingly, McDowell's claim of a violation of his right to due process based on allegedly false reports cannot stand and defendants' motion as to that claim should be granted.

### 3. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment

---

[14] To the extent that McDowell claims a constitutional violation because WCCF did not follow their own policy, such a claim is without merit.  See generally Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990) ("The fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action does not settle what protection the federal due process clause requires.") (internal quotation marks and citations omitted); Dixon, 224 F. Supp. 2d at 744-45.

under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  In order to establish an equal protection violation for racially discriminatory conduct, the plaintiff must "prove purposeful discrimination" based on race.  Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).

In this case, McDowell asserts that, first, Harpp failed to file a misbehavior report against Martin because Martin was white.  McDowell makes at best only vague and conclusory allegations that race was a motivating factor in the different treatment.  The mere fact that two individuals of different races were treated differently, without more, fails to establish a prima facie case for an equal protection deprivation.  See De Jesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996).  Defendants' motion on this claim should be granted.

Second, McDowell contends that Caucasian inmates were provided with copies of their administrative segregation orders while in administrative segregation while McDowell was advised that copies of the orders were not permitted to be disbursed to the inmates. McDowell has submitted a copy of an administrative segregation order given to a white inmate during that inmate's confinement in segregation.  See Docket No. 45 at 36 (copy of administrative segregation order given to a white inmate, dated July 4 and 5 indicating that the inmate would remain in administrative segregation for "causing a disturbance" and would be reviewed in five days), 26 (granting grievance and pledging to McDowell that the facility policies would be changed to permit inmates to receive a copy of segregation orders, dated July 27, 2006).

Thus, viewing this evidence in the light most favorable to McDowell, evidence has

been proffered that in the period when McDowell was confined in administrative

segregation, white inmates received copies of the segregation orders while black inmates

did not.  This suffices to raise a question of fact as to whether McDowell was denied copies

of his order intentionally because of his race.  Accordingly, defendants' motion on this claim

should be denied.


## C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified

immunity generally protects governmental officials from civil liability "insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon,

236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir.

Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a

government actor may still be shielded by qualified immunity if it was objectively reasonable

for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City

of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d

364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true,

there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if

there is a constitutional violation does a court proceed to determine whether the

constitutional rights, of which a reasonable person would have known, were clearly

established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  As

22

discussed <u>supra</u>, it is undeniable that by 2006, legal precedent established that an inmate was entitled to due process of law before being confined in administrative segregation, including a fair and impartial hearing, and that corrections officers could not discriminate against inmates based upon race.  Accepting all of McFadden's evidence as true, it is also clear that defendants were acting unreasonably in denying McDowell a fair and impartial hearing, keeping him in segregation without affording a timely and informal opportunity to be heard, and failing to provide orders that were available to similarly situated white inmates confined to segregation.

Accordingly, it is recommended that defendants' motion on this ground be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 64) be:

1. **GRANTED** as to McDowell's claims for insufficient notice, false misbehavior report, and the Equal Protection Clause claim for failing to charge Martin with a disciplinary violation; and

2. **DENIED** in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  August 27, 2009
    Albany, New York

          _____

          United States Magistrate Judge

24